Filed 6/17/24  P. v. Martin CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TRAVIS EDWARD MARTIN,<br><br>    Defendant and Appellant. | 2d Crim. No. B325048<br>(Super. Ct. No. 2021029627)<br>(Ventura County) |

Travis Edward Martin appeals from a judgment following a trial at which the jury found him guilty of seven counts of committing a lewd act upon a child (Pen. Code[1], § 288, subd. (a); counts 1-7), posing or modeling a minor for sexual purposes (§ 311.4, subd. (c); count 8), and possession or control of child pornography (§ 311.11, subd. (a); count 9).  As to all counts, appellant admitted two strike priors (§§ 667, 1170.12).  As to each of counts one through seven, appellant admitted two prior

_____

[1] All further statutory references are to the Penal Code unless otherwise noted.

convictions for committing a lewd act upon a child (§ 667.61, subds. (a), (d)) and a serious felony prior (§ 667, subd. (a) (§ 667(a)).  The court sentenced appellant to a total term of 610 years to life:  (1) 75 years to life under the Three Strikes Law, plus an additional five years for the section 667(a) serious felony priors, for counts one through seven; and (2) 25 years to life for counts eight and nine.

Regarding his convictions, appellant contends:  (1) the trial court prejudicially erred in admitting Evidence Code section 1108 evidence; (2) the prosecutor committed misconduct by misstating the evidence during closing argument; (3) the court improperly admitted expert evidence regarding Child Sexual Abuse Accommodation Syndrome; and (4) cumulative error.

Concerning his sentence, appellant asserts the court abused its discretion in both (1) denying appellant's request to strike the section 667(a) serious felony prior enhancements; and (2) sentencing appellant to a term of 610 years to life in violation of the prohibition against cruel and unusual punishment.

We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Background Information*

Natalie Wald[2] met appellant through his parents, whom Natalie and her husband James Wald had met at church. Natalie and James had two children—a daughter, Jane Doe, and a son.

Appellant's mother told Natalie appellant was incarcerated for child sexual abuse.  Appellant served a sentence of approximately three and a half years.  In 2016, several years

---

[2] We refer to the Walds by their first names to avoid confusion.  No disrespect is intended.  We refer to the charged victim as "Jane Doe" or "Doe."

2

after appellant's release from prison, appellant and James became business partners when they purchased a company called Entertainment Technology. Appellant paid for many family trips with the Walds, to places like Disneyland, June Lake, and Great Wolf Lodge. Appellant also paid the private school tuition for the Wald children.

Natalie allowed appellant to take her children to his home in Oxnard, where he lived with his mother, once or twice a week. The children thought of appellant as a fun uncle and his mother as a grandmother.

*Jane Doe's Testimony*

Jane Doe was seven years old when she testified at appellant's trial. At Great Wolf Lodge, after putting on her swimsuit, appellant licked her vagina. Later, after a swim, appellant licked Doe's vagina again. He also touched Doe's vagina with his finger at Great Wolf Lodge. Appellant forced Doe to put her mouth on his penis "a lot of times at his house." At his house, he also touched Doe's vagina with his fingers more than once. He orally copulated her at his home and at Disneyland. Appellant told Doe that her mother would hate Doe if Doe told her what he was doing.

When she was about four years old, Doe told her mother Natalie about appellant's conduct. Natalie did not believe Doe at that time because appellant denied. Natalie later believed her when they talked at the park.

*Doe's Reports to Natalie*

Natalie testified that sometime before Doe turned five in February 2020, and likely shortly before September 28, 2019, Doe told Natalie appellant had licked her "hoo-hoo," Doe's word for vagina. Natalie called appellant, who denied and said he could no longer spend time with Doe. Doe cried and stated she did not

know why she said appellant had done that. Natalie did not tell Child Protective Services or the police. After a brief hiatus, appellant began seeing the children again, and the status quo returned within a few months.

On October 31, 2021, appellant and Natalie argued about appellant picking up and holding Doe. The argument escalated, and Natalie threatened to call the police. On November 3, 2021, appellant spoke to Natalie and her husband about Natalie no longer doing accounting work for Entertainment Technologies.

From Doe's initial report until November 2021, Natalie had asked Doe every few weeks if there had been "any licking going on." Doe had denied. On November 4, 2021, Natalie asked Doe if anyone ever touched her, and she said no. Natalie had a feeling Doe was lying. The next day, Natalie took Doe to the park and asked if she had any secrets. Doe said appellant licked her "hoo-hoo" and called it "cleaning," and he touched her "hoo-hoo" with his hands. Doe touched appellant's "privates" and put her mouth on it. Doe indicated the conduct occurred at Disneyland and June Lake. That same day, Natalie called the police.

*Police Investigation and Appellant's Arrest*

On November 9, 2021, Detective Meagan Yates interviewed Doe, who was about six and a half years old at the time. Doe said when she was with appellant at Great Wolf Lodge, appellant touched her vagina with his fingers and made her touch his private part with her hands and mouth. Appellant also touched her vagina with his fingers and tongue at his house in Oxnard. Doe said appellant called licking "cleaning" and told Doe not to tell her mother. Doe said appellant never took pictures of her but showed her a video of two four-year-old girls showering together.

Law enforcement found photos of a young female's exposed vaginal and anal area on appellant's iPad. One photo appeared

4

to show an adult hand spreading the child's labia open to better expose her vagina. Detective Yates believed clothing the female in the photos wore matched Jane Doe's clothing, which Natalie had provided.

*Evidence Code Section 1108 Testimony*

Autumn F. was 27 years old at the time of appellant's trial. Appellant offered to babysit Autumn when her parents were divorcing. Autumn was eight when she and appellant began spending time alone. Appellant took her to the movies, to toy stores, and on drives. When Autumn was nine, appellant asked her to take her clothes off at his shop. Appellant wanted to photograph her, but she refused to smile until her clothes were back on. He inserted his fingers into her vagina for about 20 to 30 minutes, which hurt. Appellant licked her vagina. He took quite a few photos of Autumn after she put her clothes back on.

Appellant attempted to molest Autumn at Disneyland. He told his family she needed to take a nap. At the hotel room, appellant told Autumn to lay down. She did, and appellant climbed on top of her and tried to pull her pants down. Appellant touched her vagina with his tongue over her underwear. He also visited Autumn's family at their home. For about a year, every time he came into Autumn's room to say goodnight, he would put his fingers into her vagina. Appellant threatened to kill her mother if she told anybody. Autumn told no one until she was taken to the police. Appellant confessed to some of the conduct Autumn described as occurring at the shop and at Disneyland. In 2006, appellant was convicted of two counts of lewd and lascivious acts with a child under 14 (§ 288, subd. (a)) and one count of using a minor for sex acts (§ 311.4, subd. (c)). At the trial for his conduct against Doe, appellant stipulated to those convictions.

5

Hailee G. was 26 years old at the time of appellant's trial. In 2006, appellant was an adult, and she was around ten years old. Hailee's family moved in with appellant for about a year. Appellant would take her shopping and buy her whatever she wanted. But eventually, appellant started doing things she did not like. At first, he sat next to her and put his arm around her. Then, he would have her sit on his lap and touch her by the waist. The conduct progressed to touching her under her clothes but over her underwear. Ultimately, appellant started touching Hailee's vagina and inserting his finger inside it. She would "tell him no," but appellant would try to hold her. Initially, Hailee did not tell anyone about appellant's acts because she thought they were friends. Later, she told her stepmom, and the police were contacted.

Kasey N., Hailee's sister, was 22 years old at the time of trial. Kasey was six years old in 2006. Appellant would give her extra sweets and would touch her inappropriately when they were alone together. Over three times, appellant put his hand down her pants and rubbed her vagina with his fingers. Kasey testified that in order to keep her quiet, appellant would pretend he was someone else, a person who lived in the home and who Kasey loved. She kept quiet for a while but ultimately told her mom and the police about the abuse. Neither Kasey's nor Hailee's claims resulted in convictions.

*Child Sexual Abuse Accommodation Syndrome*

Dr. Anthony Urquiza testified as an expert on Child Sexual Abuse Accommodation Syndrome (CSAAS). Dr. Urquiza explained CSAAS is neither a diagnosis nor a mental health disorder. He also testified CSAAS is not and should not be used to identify abused victims. Instead, it is a description of common behaviors of a sexually abused child.

Dr. Urquiza did not interview Jane Doe, nor did he read the police reports in her case.

## DISCUSSION

### *Evidence Code Section 1108 Testimony*

Appellant contends the trial court prejudicially erred in admitting the Evidence Code section 1108 evidence. We disagree.

Evidence Code section 1101 generally "limits the admissibility of so-called 'propensity' or 'disposition' evidence offered to prove a person's conduct on a particular occasion." (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 822-823.) Evidence Code section 1108[3] creates an exception to this rule authorizing the admission of evidence of the defendant's prior sexual offenses unless it would be unduly prejudicial pursuant to Evidence Code section 352.[4]

Evidence Code section 1108 creates a "presumption in favor of admissibility." (*People v. Merriman* (2014) 60 Cal.4th 1, 59.) Nevertheless, trial courts "must engage in a careful weighing process under [Evidence Code] section 352." Factors the court should consider include whether the prior act is remote, "the

---

[3] Evidence Code section 1108 states: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (Evid. Code, § 1108, subd. (a).)

[4] Evidence Code section 352 provides that "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

degree of certainty of its commission, and the . . . similarity to the charged offense. (*People v. Falsetta* (1999) 21 Cal.4th 903, 917 (*Falsetta*).) We review admission under Evidence Code section 1108 for abuse of discretion. (*People v. Cordova* (2015) 62 Cal.4th 104, 132.)

Appellant argues the uncharged offenses against Hailee and Kasey were not similar because they did not involve oral copulation or photography. But he ignores other similarities that made the evidence highly probative. In each case, appellant spent time with the family. He initiated a period of grooming in which he bought toys or provided extra sweets. Then, he engaged in sexual misconduct to varying degrees. Common to Hailee, Kasey, and Doe was appellant using his hands to touch their vaginas. The three were similar in age when abused.

Appellant argues Hailee's and Kasey's roughly 16-year-old offenses were too temporally remote. However, courts have repeatedly upheld admission when the offenses occurred many years prior. (See e.g., *People v. Branch* (2001) 91 Cal.App.4th 274, 285 [similarity between offenses "'balanced out'" a 30-year gap]; *People v. Waples* (2000) 79 Cal.App.4th 1389, 1395 [20-year gap not too remote].) Given their similarity with the charged crimes, the offenses against Hailee and Kasey were not too remote.

Appellant argues Hailee's and Kasey's testimony was unreliable because appellant denied their allegations, they were never proven in court, and there was no corroboration. However, appellant's denial does not make the testimony unreliable, and neither does the lack of a conviction, especially when no charges were filed. Absence of corroboration is unsurprising given the "secretive nature of sex crimes." (*Falsetta*, *supra*, 21 Cal.4th at

p. 911.) Ultimately, the jury was the judge of whether the testimony was credible.

We have considered appellant's additional challenges to Hailee's and Kasey's testimony and find them equally unpersuasive.

Appellant asserts the trial court should have excluded Autumn F.'s testimony as cumulative of appellant's confessions and convictions. But the prosecution was not obliged to rely solely on such antiseptic evidence. (Cf. *People v. Johnson* (2015) 61 Cal.4th 734, 767.) Moreover, Autumn testified about additional acts of sexual abuse for which appellant was not charged or convicted. The court did not abuse its discretion in admitting the Evidence Code section 1108 testimony.

### Prosecutorial Misconduct

Appellant asserts the prosecutor committed misconduct by misstating the evidence in closing argument; he argues the error requires reversal. We conclude appellant forfeited this claim by failing to timely object at trial. However, even considering the merits of the claim, the error was harmless.

"[M]ischaracterizing the evidence is misconduct." (*People v. Hill* (1998) 17 Cal.4th 800, 823.) To preserve a misconduct claim for appeal, a defendant must make a timely objection unless "an objection would have been futile . . . ." (*People v. Winbush* (2017) 2 Cal.5th 402, 485.)

The prosecutor misstated the evidence in closing argument when he indicated that all the prior offenses involved oral copulation and photography. Appellant did not object. The objection would not have been futile. We conclude the claim is forfeited.

Appellant argues defense counsel's failure to object constituted ineffective assistance of counsel. We are

9

unpersuaded. "[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance." (*People v. Hillhouse* (2002) 27 Cal.4th 469, 502.) Counsel might have believed objecting "would focus the jury's attention on the [prior conduct] in ways that would not be helpful to the defense." (*People v. Harris* (2008) 43 Cal.4th 1269, 1289.)

Regardless, the error was harmless under both federal and state constitutional standards. Under the federal standard the misstatement did not infect the trial with such "'unfairness as to make the resulting conviction a denial of due process . . . .'" (*People v. Martinez* (2010) 47 Cal.4th 911, 955.) Under the state standard, it was not "reasonably probable the trial outcome was affected." (*People v. Shazier* (2014) 60 Cal.4th 109, 127.)

The prosecutor's circumscribed misstatement did not result in a denial of due process nor is it reasonably probable the outcome would have been different absent the error. The trial court instructed the jury that the attorney arguments are not evidence. (CALCRIM No. 222.) We presume the jury follows such instructions. (*People v. Chhoun* (2021) 11 Cal.5th 1, 30.)

Appellant contends the misconduct improperly bolstered Doe's credibility by exaggerating the similarity between the prior and charged offenses. Although the prior and charged offenses differed in some respects, they all shared many similarities. Moreover, the prosecutor made no misstatement as to Autumn.

Ultimately, Doe's detailed testimony was largely consistent with her prior statements. The Evidence Code section 1108 witnesses lend credence to her account, as do photographs recovered from appellant's iPad. While the prosecutor slightly overstated the similarity between prior and charged offenses, we cannot find a reasonable probability of a different outcome.

10

*CSAAS Evidence*

Appellant contends the trial court should have excluded Dr. Urquiza's CSAAS testimony.  We disagree.

Appellant argues the CSAAS evidence should have been subject to *Kelly/Frye* scientific reliability standards.  (*People v. Kelly* (1976) 17 Cal.3d 24; *Frye v. United States* (D.C. Cir. 1923) 293 F.1013.)

As this court recently determined in *People v. Munch* (2020) 52 Cal.App.5th 464, the *Kelly/Frye* rule does not apply to CSAAS evidence.  CSAAS is not expert testimony based on a new scientific technique or method.  We see no reason to reconsider this well-established conclusion.

Appellant posits the trial court should have excluded the CSAAS evidence because it improperly bolstered Jane Doe's credibility and allowed the jury to consider it as evidence of guilt.  Appellant maintains CALCRIM No. 1193[5] did not cure this error but misstated the law.

We rejected a similar challenge in *People v. Gonzales* (2017) 16 Cal.App.5th 494 (*Gonzales*).  In *Gonzales*, as here, the CSAAS expert testified that CSAAS is not a tool to help diagnose child sexual abuse.  (*Id*. at pp. 503-504.)  We concluded "[t]he CSAAS

---

[5] The jury was instructed using CALCRIM No. 1193:  "You have heard testimony from Dr. Anthony Urquiza regarding child sexual abuse accommodation syndrome.  [¶]  Dr. Urquiza's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him or any conduct or crimes with which he was not charged.  [¶]  You may consider this evidence only in deciding whether or not [Jane Doe's] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of her testimony."

11

evidence simply neutralizes the victim's apparently self-impeaching behavior." (*Id.* at p. 504.) "Thus, under CALCRIM No. 1193, a juror who believes [Dr. Urquiza's] testimony will find both that [Doe's] apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested. There is no conflict in the instruction." (*Ibid.*)

Appellant takes issue with the instruction's use of "'not inconsistent,'" contending "not inconsistent" is the same as "consistent." Even if true,[6] the instruction provides CSAAS evidence is to be considered "in deciding *whether or not* [Doe's] conduct was not inconsistent with the conduct of someone who has been molested . . . ." (italics added.) As we explained in *Gonzales*: "A reasonable juror would understand CALCRIM No. 1193 to mean that the jury can use [Dr. Urquiza's] testimony to conclude that [Doe's] behavior does not mean she lied when she said she was abused." (*Gonzales*, *supra*, 16 Cal.App.5th at p. 504.) CSAAS evidence and the attendant instruction serve to "disabuse jurors of commonly held misconceptions of child sexual abuse . . . ." (*Id.*, at p. 503, citing *People v. McAlpin* (1991) 53 Cal.3d 1289, 1301.) Addressing those misconceptions "neutralizes the victim's apparently self-impeaching behavior" (*id.*, at p. 504), leaving the parties free to argue and the jury to determine what the conduct may mean, including that the

---

[6] CALCRIM No. 1193 was modified in September 2022, and this part of the instruction now states: "You may consider this evidence only in deciding whether or not [the alleged victim's] conduct was consistent with the conduct of someone who has been molested, and in evaluating the believability of the alleged victim."

behavior, such as delay in reporting, could be indicative of falsehood.

We conclude the trial court properly admitted and instructed on the CSAAS evidence.

*Cumulative Error*

Appellant claims cumulative error necessitates reversal. We detected only one error—the prosecutor's misstatement during closing argument—and concluded it was harmless. Accordingly, there is no cumulative error.

*Section 667(a) Serious Felony Prior Enhancements*

Appellant asserts the trial court abused its discretion by failing to strike the section 667(a) serious felony prior enhancements. We disagree.

Section 1385 vests the trial court with the authority to dismiss enhancements. We review the exercise of that authority for abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) When, "'as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion "must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice."'" (*People v. Jefferson* (2016) 1 Cal.App.5th 235, 242-243.)

Appellant contends the refusal to dismiss the section 667(a) enhancements contradicted the trial court's initial statement that a single term of 75 years to life would have been sufficient. However, the court made that statement before hearing counsels' argument. After argument, the court found the prosecution "summed it up well. The prior offenses were of the same type, and the circumstances were very similar to those of this as well, making any grant of motion to strike unwise and unwarranted in

13

this circumstance." Openness to argument does not indicate abuse of discretion.

*Cruel and Unusual Punishment*

Appellant argues his sentence of 610 years to life violates the prohibition against cruel and unusual punishment. He maintains he "does not deserve a sentence which is the functional equivalent of life without the possibility of parole." Appellant contends a sentence he cannot possibly complete serves no rational legislative or penological purpose. We conclude appellant's sentence is not cruel or unusual.

Under the California Constitution, a sentence constitutes cruel or unusual punishment if it is "'so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'" (*People v. Dillon* (1983) 34 Cal.3d 441, 478; Cal. Const., art. 1, § 17.) Deference to the Legislature "is an important element in any disproportionality analysis." (*In re Palmer* (2021) 10 Cal.5th 959, 972.) Three analytical techniques aid this deferential review: "(1) an examination of the nature of the offense and the offender, with particular attention to the degree of danger both pose to society; (2) a comparison of the punishment with the punishment California imposes for more serious offenses; and (3) a comparison of the punishment with that prescribed in other jurisdictions for the same offense." (*Id.* at p. 973.)

Without recounting the graphic details, appellant repeatedly sexually abused a young child. Appellant concedes "the conduct as found true by the jury is morally reprehensible . . . ." (See *Ashcroft v. Free Speech Coalition* (2002) 535 U.S. 234, 244 ["The sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people"].) Of course, "[t]here exists a strong public policy to protect children of

14

tender years." (*People v. Olsen* (1984) 36 Cal.3d 638, 646.) Especially given appellant had already served prison time for sexual abuse of a child under similar circumstances, appellant manifestly poses a danger to society.

As to comparison with more serious offenses in California, "lewd conduct on a child may not be the most grave of all offenses, but its seriousness is considerable. It may have lifelong consequences to the well-being of the child." (*People v. Christensen* (2014) 229 Cal.App.4th 781, 806.) Moreover, a substantial portion of appellant's sentence stems from his prior convictions and the Three Strikes Law. The United States Supreme Court has approved recidivist statutes that "deal[] in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." (*Rummel v. Estelle* (1980) 445 U.S. 263, 276; *Ewing v. California* (2003) 538 U.S. 11 [affirming a life sentence for grand theft under California's Three Strikes Law].) Similarly, "[w]hen faced with recidivist defendants . . . California appellate courts have consistently found the Three Strikes law is not cruel and unusual punishment." (*People v. Mantanez* (2002) 98 Cal.App.4th 354, 359.)

Appellant directs us to no jurisdiction with lesser punishment for similar offenses. Regardless, the state constitution "does not require California to march in lockstep with other states in fashioning a penal code. It does not require 'conforming our Penal Code to the "majority rule" or the least common denominator of penalties nationwide.'" (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1516.) Fundamentally, appellant's punishment is not so disproportionately harsh as to

shock the conscience or offend notions of human dignity.  The punishment is not cruel or unusual under the state constitution.

California courts have repeatedly affirmed sentences exceeding the defendant's natural life.  (See, e.g., *People v. Andrade* (2015) 238 Cal.App.4th 1274, 1309-1310 [195 years to life upheld]; *People v. Panighetti* (2023) 95 Cal.App.5th 978, 1000-1004 [280 years to life].)  Such punishment promotes deterrence of potential offenders by unequivocally expressing society's intolerance of the punished behavior.  "In practical effect, [appellant] is in no different position than a defendant who has received a sentence of life without possibility of parole:  he will be in prison all his life."  (*People v. Byrd* (2001) 89 Cal.App.4th 1373, 1383.)

Nor does appellant's sentence violate the Eighth Amendment ban on cruel and unusual punishment.  (U.S. Const., 8th Amend.)  The Eighth Amendment contains a "'narrow proportionality principle' that 'applies to noncapital sentences.'"  (*Ewing v. California, supra*, 538 U.S. at p. 20 (lead opn. of O'Connor, J., joined by Rehnquist, C.J., and Kennedy, J.).)  "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare."  (*Rummel v. Estelle, supra*, 445 U.S. at p. 272.)  "There is considerable overlap in the state and federal approaches.  'Although articulated slightly differently . . . [t]he touchstone in each is gross disproportionality.'"  (*People v. Baker* (2018) 20 Cal.App.5th 711, 733.)

The Eighth Amendment analysis begins with a comparison between the gravity of the offense and the severity of the sentence.  (*Graham v. Florida* (2010) 560 U.S. 48, 60.)  In the "'rare case'" this threshold comparison leads to an inference of gross disproportionality, "the court should then compare the

defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." (*Ibid*.)  For reasons discussed above, appellant's case is not the rare situation in which an inference of gross disproportionality arises. Therefore, no Eighth Amendment violation exists.

We have reviewed appellant's remaining contentions and conclude he has not shown grounds for reversal.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

CODY, J.

We concur:

GILBERT, P. J.

BALTODANO, J.

17

David R. Worley, Judge
Superior Court County of Ventura

_____

Bases & Bases, Arielle Bases, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Julie A. Harris, Deputy Attorney General, and Kenneth C. Byrne, Supervising Deputy Attorney General, for Plaintiff and Respondent.